JINA L. CHOI (N.Y. Bar No. 2699718)
  ChoiJ@sec.gov
JOHN S. YUN (Cal. Bar No.112260)
  YunJ@sec.gov

Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
44 Montgomery Street, Suite 2800
San Francisco, California 94104
Telephone:  (415) 705-2500
Facsimile:  (415) 705-2501

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>          Plaintiff,<br><br>   v.<br><br>LION CAPITAL MANAGEMENT, LLC AND HAUSMANN-ALAIN BANET,<br><br>          Defendants. | Case No. CV-12-05116-WHA<br><br>**PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENTS AGAINST DEFENDANTS LION CAPITAL MANAGEMENT, LLC AND HAUSMANN-ALAIN BANET**<br><br>Date:  October 31, 2013<br>Time:  8:00 a.m.<br>Judge:  William H. Alsup<br>Courtroom:  8 |

## PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENTS

On Thursday, October 31, 2013, at 8:00 a.m., in Courtroom 8 of the Phillip Burton Federal Building, on the Nineteenth Floor, at 450 Golden Gate Avenue, San Francisco, California 94102, plaintiff Securities and Exchange Commission ("Commission") will move the Court in the above-captioned matter for the entry of default judgments against defendants Hausmann-Alain Banet ("Banet") and Lion Capital Management, LLC ("Lion Capital") (together, "Defendants"). This motion is being made on the grounds that the Complaint's well-pleaded allegations establish that Defendants violated Section 17(a)(1), (2), and (3) of the Securities Act of 1933 ("Securities Act"), Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5(a), (b), and (c) thereunder, and Sections 206(1), 206(2) and 206(4) of the Investment Advisers Act of 1940 ("Advisers Act") and Rule 206(4)-8 by using material misstatements and omissions, and engaged in a fraudulent scheme, to induce clients to invest $550,000 in the Lion Absolute Value Fund ("Fund"), which Banet controlled through Lion Capital. The Commission requests that the Court impose permanent injunctions against Banet's and Lion Capital's further violations of the federal securities laws. In light of the criminal sentence against Banet, the Commission has decided not to seek monetary relief in the form of disgorgement and civil monetary penalties against Banet or Lion Capital. This Motion is supported by the pleadings on file in this case, as well as in the related criminal case entitled *United States of America v. Hausmann-Alain Banet*, Case No. CR-12-00715-WHA, the proposed orders of default judgment, and such oral argument and other evidence as the Court shall choose to entertain.

I.     INTRODUCTION

The Court should enter default judgments imposing permanent injunctions because Defendants failed to respond to the Complaint's allegations that they took over $550,000 from two investors through material misstatements and omissions, and through a fraudulent scheme, in violation of the anti-fraud provisions of the Securities Act and Exchange Act and also violated their fiduciary duties under the Advisers Act. Banet's guilty plea in the related *United States of America v. Hausmann-Alain Banet*, Case No. CR-12-00715-WHA (the "Criminal Proceeding"), admits much of the misconduct alleged in the Complaint. Criminal Docket No. 59.

1

## II. FACTUAL ALLEGATIONS

The Commission filed its Complaint against Defendants on October 3, 2012. Docket No. 1. Previously, the United States Attorney unsealed the indictment against Banet in the Criminal Proceeding. According to the Complaint's allegations, Lion Capital and Banet defrauded investors of Lion Absolute Value Fund (the "Fund"). Complaint, ¶ 1. Lion Capital is an investment adviser located in San Francisco, California and incorporated in the State of Delaware as a limited liability company. *Id.*, ¶ 7. Since 2003, Banet has been Lion Capital's Principal. *Id.*, ¶ 9.

Lion Capital is the General Partner & Managing Member of the Fund, a hedge fund that purported to invest in securities since at least November 2008. *Id.*, ¶ 10. Lion Capital and Banet used the Fund to misuse investor assets and provide investors with fabricated statements of the Fund's performance. Those account statements materially misstated the financial condition and performance of the Fund, as well as the amount of assets it had. *Id.*, ¶ 1.

The Fund has at least two investors who purchased securities in the Fund ("Clients A and B"). Client A was the trustee of her brother's estate, and Client A made the decision to invest in the Fund both for herself and for the beneficiaries of her brother's estate, Client B. *Id.*, ¶ 11. Client A is a 69 year-old retired schoolteacher. *Id.*, ¶ 12. Banet falsely told Client A that he had successfully opened two hedge funds using a long/short equity investing strategy. Banet also falsely told Client A that he had closed those earlier funds when they reached between 8 and 12 investors. *Id.*, ¶ 13. In November 2008, Banet told Client A that he was opening another hedge fund. Banet gave Client A an opportunity to invest in the Fund, which he claimed to have recently launched for new investors. *Id.*, ¶ 15.

Client A told Banet that she was giving Banet a significant portion of her retirement savings and would need the money she invested in the Fund within a few years. Banet pledged to have the money available within 30 to 60 days of Client A's redemption request. *Id.*, ¶ 18. Based on her understanding that the Fund would invest in the stock market using a long/short equity strategy, Client A decided to invest nearly $350,000 of her and Client B's assets in the Fund. *Id.*, ¶ 17. Banet provided Client A with the paperwork to transfer the assets from the two investors' retirement accounts into the Fund. The wire instructions that Banet prepared directed that the two investors'

accounts be transferred into the operating bank account of Lion Capital, rather than a segregated account for invested funds. *Id.*, ¶ 19.

Despite representing to Client A that the Fund would invest in the stock market, Banet instead misappropriated assets that had been promised to the Fund to finance his business operations and to pay personal expenses. *Id.*, ¶ 21. Among other things, Banet used assets promised to the Fund to pay for Banet's residential mortgage on his condominium in San Francisco and to pay Lion Capital's office rent. He also used some of the money to pay for his ongoing legal expenses and to make staff payroll. None of the money that Clients A and B gave to Banet and Lion Capital in Novmeber 2008 was actually invested in the stock market, as Banet had promised. *Id.*, ¶ 22. After her initial investment, Client A began receiving quarterly account statements from Banet for the accounts of Clients A and B. The account statements falsely showed steady gains due to trading income. Banet also signed each statement stating that "To the best of my knowledge and belief, unaudited statement is accurate and complete." *Id.*, ¶ 23.

By May 2009, Banet had misappropriated virtually all of the initial $350,000 investment that Clients A and B had made in the Fund. Needing more money, Banet approached Client A again. *Id.*, ¶ 26. Banet told Client A that he had another investment opportunity for her. Client A also believed, from the account statements of her investments in the Fund, that Banet had produced consistent investment gains on her initial investment, so she agreed to invest in the Fund again. *Id.*, ¶ 27. Client A authorized the transfer of an additional $210,000 from the retirement accounts of Clients A and B to Lion Capital's operating bank account. Banet spent these amounts, which were meant for investing in the Fund, on his business and personal expenses. *Id.*, ¶ 28. In April 2011, Client A began attempting to redeem both investors' interests in the Fund. *Id.*, ¶ 29. Client A's and Client B's requests for full redemption were not honored. *Id.*, ¶ 30.

After being served with the Complaint on October 15, 2012, Banet and Lion Capital each failed to respond. Docket Nos. 12 and 14. The Clerk of the Court entered Banet's default in November 2012 and Lion Capital's default in December 2012. Docket Nos. 13 and 15. On May 22, 2013, the United States Attorney filed Banet's written plea agreement (the "Plea Agreement") in the Criminal Proceeding. Criminal Docket No. 59. In the Plea Agreement, Banet agreed to plead guilty

3

to two counts of wire fraud and two counts of mail fraud.[1] On August 15, 2013, the Court entered the criminal judgment in the Criminal Proceeding and sentenced Banet to 56 months of incarceration, an additional 36 months of supervised release, restitution payments of $1,217,668.40 and the forfeiture of certain assets. Criminal Docket No. 77.

### III. LEGAL ARGUMENT

#### A. The Pertinent Standard For Granting Default Judgment.

Once Defendants are in default, the well-pleaded allegations in the Complaint are deemed established against them. *E.g., Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002); *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987). This means that the factual allegations of the Complaint, except those relating to the amount of monetary relief, will be taken as true. Fed. R. Civ. Proc. 8(b)(6); *Garamendi v. Henin*, 683 F.3d 1069, 1080 (9th Cir. 2012); *Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977). As a result, all potential affirmative defenses are precluded upon entry of default. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 159 (2d Cir. 1992).

Unless the Court desires one, an evidentiary hearing is not required on the Commission's motion for entry of a default judgment. Fed. R. Civ. P. 55(b)(2) (stating that the Court "may conduct such hearings or order such references as it deems necessary and proper"). Instead, the Court may enter default judgments against Banet and Lion Capital based upon the written materials submitted by the Commission in support of this motion. *Davis v. Fendler*, 650 F.2d 1154, 1161-62 (9th Cir. 1981).

#### B. The Complaint Establishes Banet's And Lion Capital's Liability.

##### 1. Defendants Made Material Misrepresentations and Omissions.

In the first and second claims for relief, the Complaint alleges violations of the anti-fraud provisions of the Securities Act and Exchange Act. In particular, Section 10(b) of the Exchange Act

---

[1] Banet admits that between November 2008 and July 2012, he induced numerous persons to deposit over $1.2 million into bank accounts he controlled by "falsely and fraudulently representing that I, on behalf of" Lion Capital would invest the money. Plea Agreement, ¶ 2. The Plea Agreement identifies one individual as "S.W.," who is the same person identified in the Complaint as "Client A." *See Id.* Banet admits that he promoted a scheme by creating false and fraudulent quarterly statements that he sent to S.W., while using the money for his own personal and business expenses. *Id.*

prohibits the use "in connection with the purchase or sale of a security . . . of any manipulative or deceptive device or contrivance in contravention" of the Commission's rules or regulations. 15 U.S.C. § 78j(b). Pursuant to Section 10(b), the Commission adopted Rule 10b-5, which makes it unlawful to (a) to employ any device, scheme, or artifice to defraud; (b) to make any untrue statement of a material fact or to omit to state a material fact; or (c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person. 17 C.F.R. § 240.10b-5(a)-(c). Similarly, Section 17(a) of the Securities Act makes it unlawful, directly or indirectly, (1) to employ any device, scheme, or artifice to defraud; (2) to obtain money or property by means of any untrue statement of a material fact or any omission of a material fact; or (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser. 15 U.S.C. §§ 77q(a)(1)-(3).

Violations of Section 17(a)(1), Section 10(b), and Rule 10b-5 require proof of scienter - a "mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976). Recklessness satisfies the scienter requirement. *See Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1568-69 (9th Cir. 1990) (en banc). For violations of Section 17(a)(2) and (3) of the Securities Act, however, a showing of negligence is sufficient to establish liability. *Aaron v. SEC*, 446 U.S. 680, 695-702 (1980); *SEC v. Hughes Capital Corp.*, 124 F.3d 449, 453-54 (3d Cir. 1997).

Each of these violations also require proof that the fraud was material. *See TSC Indus. v. Northway, Inc.*, 426 U.S. 438, 449 (1976). A fact is material if there is a substantial likelihood that a reasonable investor would consider it important in making an investment decision. *Id.*

The Complaint's allegations establish Banet's and Lion Capital's liability for knowingly making material misstatements and omissions. Defendants solicited an initial $350,000 investment from Clients A and B through representations that the money would be deposited in the Fund for investing in equity securities, that the Clients could withdraw their money on sixty-day's notice and that Defendants had a successful investment record through other, now closed, hedge funds. In reality, none of the $350,000 was deposited in the Fund for equity securities investments; Banet deposited the money in bank accounts he controlled and depleted the money for personal expenses

5

CASE NO. CV-12-05116-WHA
DEFAULT JUDGMENT MOTION

and investment projects. Later, Defendants induced Clients A and B to invest another $200,000 in the Fund through false account statements representing that the Clients' money had been profitably invested in equity securities. These misrepresentations regarding how investor funds would be used, the history of profits from the trading, and the safety of the investments are material. *See SEC v. Murphy*, 626 F.2d 633, 653 (9th Cir. 1980) (stating that "materiality of information relating to financial condition, solvency and profitability is not subject to serious challenge"); *Koehler v. Pulvers*, 614 F. Supp. 829, 842 (S.D. Cal. 1985) (stating that material information includes, at a minimum, "accurate information on the use of investor funds, the benefits to be derived by the issuer, and relevant financial statements"). *See also SEC v. Trabulse*, 526 F. Supp. 2d 1008, 1013-14 (N.D. Cal. 2007) (imposing preliminary injunction after finding that adviser's misrepresentations regarding profitability of investments were material). Similarly, the undisclosed diversion of investor funds for Banet's personal benefit is also material to investors. *See SEC v. Benson*, 657 F. Supp. 1122, 1130-31 (S.D.N.Y. 1997) (finding securities fraud where corporate officer took hidden compensation in the form of kick-backs, false expense reports, ticket refunds and commissions). *See also SEC v. Hilsenrath*, 2008 Fed. Sec. L. Rep (CCH), ¶ 94,738, 2008 U.S. Dist. LEXIS 50021 at *15-18 (N.D. Cal. May 30, 2008) ("*Hilsenrath I*") (ruling that failure to disclose related party payments was material), *affirmed* 406 Fed. Appx. 197, 2010 U.S. App. LEXIS 26767 (9th Cir. Dec. 17, 2010).

### 2.     Defendants' Liability For A Fraudulent Scheme

Banet and Lion Capital are also liable for engaging in a fraudulent scheme. Subparts (a) and (c) of Rule 10b-5 of the Exchange Act create liability for "conduct that had the principal purpose and effect of creating a false appearance of fact in furtherance of the scheme." *Simpson v. AOL Time Warner*, 452 F.3d 1040, 1048 (9th Cir. 2006) (*vacated on other grounds*). Sections 17(a)(1) and (3) of the Securities Act similarly create scheme liability in the offer or sale of securities. 15 U.S.C. §§ 77q(a)(1), (3). In *WPP Luxembourg Gamma Three v. Spot Runner, Inc.*, 655 F.3d 1039, 1057-58 (9th Cir. 2011), the Ninth Circuit held that scheme liability may exist when there is misconduct "beyond misrepresentations or omissions." Substantial participation in a fraudulent scheme is enough for liability under subsections (a) and (c) of Rule 10b-5. *See SEC v. U.S. Envtl., Inc.*, 155

F.3d 107, 111-12 (2d Cir. 1998) (explaining that "a primary violator is one who participated in the fraudulent scheme" (internal quotation marks omitted)).

The Complaint alleges that Banet and Lion Capital sent false quarterly statements to Client A to create the false impression that her money had been profitably invested by the Fund. These false statements were part of a scheme to allow Banet to misappropriate investor money for his own use, rather than investing the money as promised. Such schemes create liability under Subparts (a) and (c) of Rule 10b-5. *See SEC v. Zanford*, 535 U.S. 813, 819-823 (2002) (finding scheme liability for the misappropriation of investor funds associated with the sales of securities).

### 3.   Defendants' Liability Under The Advisers Act

The Complaint's third and fourth claims for relief allege Banet's and Lion Capital's violations of the Advisors Act. Section 202(a)(11) of the Advisers Act defines an "investment adviser" includes "any person who, for compensation, engages in the business of advising others . . . as to the value of securities or as to the advisability of investing in, purchasing, or selling securities, . . . ." 15 U.S.C. § 80b-2(a)(11). Sections 206(1) and 206(2) of the Advisers Act make it unlawful for an investment adviser to employ any device, scheme, or artifice to defraud clients or prospective clients or to engage in any transaction, practice, or course of business that defrauds clients or prospective clients. 15 U.S.C. § 80b-6(1), (2). Section 206(1) requires a showing of scienter, while Section 206(2) does not, however, require proof of scienter. *SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 195 (1963); *SEC v. Steadman*, 967 F.2d 636, 641 (D.C. Cir. 1992). An investment adviser is a fiduciary, and thus has an affirmative obligation of "utmost good faith, and full and fair disclosure of all material facts, as well as an affirmative obligation to employ reasonable care to avoid misleading his clients." *SEC v. Capital Gains*, 375 U.S. at 194 (internal quotations omitted).

Section 206(4) of the Advisers Act makes it unlawful for an investment adviser to engage in any act, practice, or course of business which is fraudulent, deceptive, or manipulative. 15 U.S.C. § 80b-6(4). Advisers Act Rule 206(4)-8 thereunder, effective September 10, 2007, prohibits fraudulent or deceptive conduct with respect investors in pooled investment vehicles. The Fund was a "pooled investment vehicle" because Banet represented that it would invest primarily in equity securities. 15

1 | U.S.C. § 77b(a)(1); 17 C.F.R. § 275.206(4)-8b (incorporating "investment company" definition from
2 | 15 U.S.C. § 80a-3(a)(1)).

Banet and Lion Capital are investment advisers. Banet represented that Defendants would invest the Fund's assets in equity securities and Banet and Lion Capital received compensation for their activities by diverting investor money for business and personal expenses. Banet and Lion Capital violated their fiduciary duties to the Fund by misappropriating investor funds. Rather than transferring investor money to the Fund, Defendants sent the money to Lion Capital's bank accounts where the money was used for business and personal expenses.

### C. Permanent Injunctions Are Proper Against Banet and Lion Capital.

Because Banet and Lion Capital are liable for securities violations, Sections 21(d) and 21(e) of the Exchange Act, Section 20(b) of the Securities Act and Section 209(d) of the Advisers Act authorize the Court to impose permanent injunctions. 15 U.S.C. ' ' 77t(b), 78u(d), (e), 80b-9(d). Under those statutory provisions, this Court should issue a permanent injunction prohibiting further statutory violations based upon a Aproper showing@ by the Commission. Such a Aproper showing@ is made when the Commission establishes that a defendant's conduct constitutes violations of the federal securities laws and that there is a reasonable likelihood that the misconduct will recur unless the defendant is enjoined. *SEC v. Fehn*, 97 F.3d 1276, 1295 (9th Cir.), *cert. denied sub nom. Fehn v. SEC*, 522 U.S. 813 (1997); *SEC v. Murphy, supra*, 626 F.2d at 655. Whether a likelihood of future violations exists depends upon the totality of circumstances. Of primary significance is past illegal conduct from which the Court may infer the likelihood of future violations. *SEC v. Management Dynamics, Inc.*, 515 F.2d 801, 807 (2d Cir. 1975). Other factors include the degree of scienter involved; the isolated or recurrent nature of the violation; and the likelihood, due to a defendant's business or occupation, that future violations might occur. *SEC v. Fehn*, 97 F.3d at 1295-96; *SEC v. Murphy*, 626 F.2d at 655.

Defendants' defrauding of investors through deliberate misrepresentations and a fraudulent scheme warrants permanent injunctions against Banet and Lion Capital. Indeed, Banet admits in the Plea Agreement that he used Lion Capital from November 2009 to July 2012 to defraud numerous investors out of over $1.2 million. As part of their fraud, Banet and Lion Capital exploited their

1  positions as investment advisers and breached their fiduciary duties under the Advisors Act.
2  Defendants therefore engaged in multiple acts of egregious conduct upon numerous victims over an
3  extended period of time. Defendants' history of securities violations demonstrates that they
4  constitute a substantial danger to investors, and should be enjoined. *See SEC v. Jasper*, 883 F. Supp.
5  2d 915, 928-29 (N.D. Cal. 2010) (writing that "[i]njunctive relief is the primary statutory remedy for
6  violations of the federal securities laws" and imposing injunctions in light of degree of scienter, long
7  time period of violations and apparent desire to return to previous occupations).
8        Even with Banet's guilty plea and sentence, the Court's imposition of permanent injunctions
9  against Banet and Lion Capital is still warranted. *See SEC v. Hilsenrath*, 2009 U.S. Dist. LEXIS
10 58930 at * 5-9 (N.D. Cal. June 26, 2009) ("*Hilsenrath II*") (imposing permanent injunction and other
11 relief despite earlier guilty plea due to seriousness of misconduct and defendant's inadequate
12 assurances that misconduct will not recur), *affirmed* 2010 U.S. App. LEXIS 26767 (9th Cir. 2010).
13 *See also SEC v. Henke*, 275 F. Supp. 2d 1075, 1086 (N.D. Cal. 2003) (imposing officer and director
14 bar and civil penalties despite criminal sentence). After being released from prison, Banet will be in
15 his early fifties and probably seeking sources of income. Banet and Lion Capital have offered no
16 assurance in this proceeding that they will not repeat their prior misconduct. Permanent injunctions
17 can serve the important function of prohibiting Defendants from resuming activities that harm
18 investors through deceit, fraudulent schemes and breaches of fiduciary duties. *See Hilsenrath II*,
19 2009 U.S. Dist. LEXIS 58930 at * 8-9 (finding that despite plea agreement, defendant had not made a
20 "reliable acknowledgment of wrongdoing or assurances against future violations").

### IV. CONCLUSION

For the reasons set forth above, the Court should enter default judgments against Banet and Lion Capital which impose permanent injunctions against federal securities law violations.

DATED: September 26, 2013                Respectfully Submitted,


/s/ John S. Yun
John S. Yun
Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION