United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

  v.

LION CAPITAL MANAGEMENT, LLC AND HAUSMANN-ALAIN BANET,

    Defendants.

No. C 12-05116 WHA

**INJUNCTION**

### INTRODUCTION

In this enforcement action, the Securities and Exchange Commission applies for default judgment seeking a permanent injunction from future violations. To the extent stated below, the application is **GRANTED**.

### STATEMENT

According to the complaint, defendant Hausmann-Alain Banet has been the principal of defendant Lion Capital Management since 2003. Since 2008, Lion Capital operated Lion Absolute Value Fund for the purpose of investing in securities. Lion Capital's two clients invested money with the fund based on Banet's reportedly false representations about the success of the fund (Compl. ¶¶ 17, 27). Instead of investing client funds, the complaint alleges that Banet used the funds to pay his residential mortgage, Lion Capital's office rent, ongoing legal expenses, and staff payroll (*id*. ¶ 22). Banet also allegedly issued account statements that

falsely showed gains due to trading income. Banet allegedly signed these statements, "To the best of my knowledge and belief, unaudited statement is accurate and complete" (*id*. ¶ 23).

In a separate criminal prosecution, Banet pled guilty to wire and mail fraud in violation of 18 U.S.C. 1343 and 18 U.S.C. 1341. His plea agreement stated (*United States v. Hausmann-Alain Banet*, Case No. CR 12-715 WHA, Dkt. No. 59 at ¶ 1):

> (1) I knowingly devised a scheme or plan to defraud, or scheme or plan for obtaining money by means of false or fraudulent pretenses, representations or promises or omission or concealment of material facts; (2) the statements made or facts omitted or concealed as part of the scheme were material, that is the statements had a natural tendency to influence, or were capable of influencing, a person to part with money; (3) I acted with the intent to defraud; that is the intent to deceive or cheat; and (4) I used, or caused to be used, a wire communication in interstate commerce to carry out or attempt to carry out an essential part of the scheme.

In his plea agreement, defendant also agreed that, among other things, the following facts were true (*id*. at ¶ 2):

> I induced numerous individuals, including S.W., who was acting on behalf of the S.W. Trust, the P.W. LLC, and the S.L.W. IRA, to deposit money into bank accounts that I controlled by falsely and fraudulently representing that I, on behalf of my investment management company, Lion Capital Management Group, LLC (Lion Capital), would invest the money. In furtherance of the scheme to defraud, I falsely and fraudulently stated that I would and did invest the money in a hedge fund, the Lion Absolute Value Fund . . . . In furtherance of the scheme, I also created false and fraudulent quarterly account statements and sent those statements to S.W. The account statements falsely stated that the investment accounts had sustained trading gains. I also intentionally failed to disclose that I never invested the money provided and that instead I spent the money for my own personal and business expenses, unrelated to generating investment income. I admit that all of these false statements and omissions were material to the individuals in deciding whether to provide me with funds and not withdraw their funds once given to me.

The Securities and Exchange Commission filed this enforcement action on October 3, 2012. After defendants were served and failed to respond in a timely manner, the Commission moved for entry of default. The clerk entered default against defendants in December 2012. Defendants have not participated in this action before or since default was entered.

The Commission moved for default judgment on September 26, 2013. Judgment in the criminal case was entered on September 11, 2013.

**ANALYSIS**

**1.    DEFAULT JUDGMENT.**

Under Federal Rule of Civil Procedure 55(b)(2), a court may grant default judgment. "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (citations omitted). Our court of appeals outlined several factors that a court, in its discretion, may consider:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). Furthermore, "[t]he general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) (internal citations omitted).

**A.    Merits and Sufficiency of Plaintiff's Claims.**

The Commission has made a compelling showing that defendants have violated 15 U.S.C. 77q(a); 15 U.S.C. 78j(b); 15 U.S.C. 80b-6(1), 80b-6(2), and 80b-6(4); 17 C.F.R. 240.10b-5; and 17 C.F.R. 275.206(4)-8.

*(1)    Defendants' Misrepresentations and Fraudulent Scheme*.

Section 17(a) (1) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 make it unlawful to make untrue statements of material fact, omit material facts, use any device, scheme, or artifice to defraud, or engage in any act, practice, or course of business which does or could operate as a fraud or deceit upon any person in connection with a purchase or sale, or in the offer or sale of, any securities. 15 U.S.C. §§ 77q(a), 78j(b); 17 C.F.R. § 240.10b-5(b). A fact is material if it would have assumed actual significance in the deliberations of a reasonable investor. *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976).

3

According to the complaint, defendants made numerous untrue statements of material fact and employed a scheme that operated as a fraud or deceit upon the investors. The complaint alleges that defendants falsely solicited funds from their clients through representations that the money would be invested and that clients could timely withdraw the funds (Compl. ¶ 18). Furthermore, defendants allegedly issued false account statements to create the impression that client monies had been profitably invested (*id*. ¶ 23).

### *(2)    Defendants' Liability Under the Advisers Act.*

The relevant sections of the Advisers Act make it unlawful for an investment adviser to employ any device, scheme, or artifice to defraud clients or prospective clients or to engage in any transaction, practice, or course of business that defrauds clients or prospective clients or to engage any act, practice, or course of business which is fraudulent, deceptive, or manipulative. 15 U.S.C. 80b-6(1), (2), (4). As already stated, defendants allegedly violated the Advisor Act by operating a fraudulent scheme. Defendants further violated their fiduciary duties to their clients by using client funds for personal and business expenses.

### B.    Other Factors.

Plaintiff will be prejudiced if default judgment is not entered. Because defendants have elected not to take part in the litigation, the Commission will be unable to fulfill its mandate to protect the investing public in the absence of a default judgment.

An entry of default judgment may not be appropriate where a large sum of money is at stake. *Eitel*, 782 F.2d at 1472. In this action, however, the Commission is seeking no monetary damages.

The remaining factors weigh in favor of granting default judgment because Banet's plea agreement shows that there is no dispute concerning the material facts and default was not due to excusable neglect. The strong public policy favoring decisions on the merits is also mitigated by Banet's plea agreement because Banet has had an opportunity to confront the claims against him on the merits and has declined. Plaintiff's application for default judgment is therefore **GRANTED**.

### 2. PERMANENT INJUNCTION.

The Securities Exchange Act of 1934 provides authority to grant the Commission's request for a permanent injunction from committing future violations of the Act. 15 U.S.C. 78u(d)–(e). To obtain a permanent injunction, the Commission:

> ha[s] the burden of showing there [is] a reasonable likelihood of future violations of the securities laws. . . . In "predicting the likelihood of future violations," [the Court] must assess "the totality of the circumstances surrounding the defendant and his violations," and we consider such factors as (1) the degree of scienter involved; (2) the isolated or recurrent nature of the infraction; (3) the defendant's recognition of the wrongful nature of his conduct; (4) the likelihood, because of defendant's professional occupation, that future violations might occur; (5) and the sincerity of his assurances against future violations.

*SEC v. Fehn*, 97 F.3d 1276, 1295–96 (9th Cir. 1996).

There is no doubt that a high degree of scienter is present here. Banet admitted in this plea agreement that his actions were done knowingly. The first factor therefore weighs in favor of granting an injunction. The Commission argues that Banet may resort to illegal conduct after he is released from prison given his past illegal activity (Dkt. No. 28 at 9). The undersigned judge has found that similar evidence of recurrence was enough to tip the scales in favor of granting injunctive relief. *SEC v. Hilsenrath*, No. C 03-3253 WHA, 2009 WL 1855283, at *3 (N.D. Cal. June 29, 2009). The second factor thus weighs in favor of granting an injunction. The Commission provides no information regarding the third and fourth factors. As to the fifth factor, the Commission states that "Banet and Lion Capital have offered no assurance in this proceeding that they will not repeat their prior misconduct" (Dkt. No. 28 at 9). While true, defendants' have not made such assurances because they have not appeared in this action.

On the whole, the record supports granting an injunction. This order recognizes that defendant Banet will likely be deported and therefore would not be subject to any injunction. In the event he is not deported or returns to this country legally or otherwise, however, Banet should be subject to the requested injunction. Accordingly, this order permanently enjoins Banet

from committing future violations of the Securities Exchange Act and the Advisers Act as follows:

It is hereby ordered that defendants and defendants' agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this default judgment by personal service or otherwise are permanently restrained and enjoined from violating Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder, by using any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange, in connection with the purchase or sale of any security:  (a) to employ any device, scheme, or artifice to defraud; (b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

It is hereby further ordered that defendants and defendants' agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this default judgment by personal service or otherwise are permanently restrained and enjoined from violating Section 17(a) of the Securities Act of 1933 in the offer or sale of any security by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails:  (a) to employ any device, scheme, or artifice to defraud; (b) to obtain money or property by means of any untrue statement of a material fact or any omission of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

It is hereby further ordered that defendants and defendants' agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this default judgment by personal service or otherwise are permanently restrained and enjoined from violating Sections 206(1) and 206(2) of the Investment Advisers Act of 1940 by using any means or instruments of transportation or communication in interstate commerce or by using the mails:  (a) to employ any device, scheme, or artifice to defraud; (b) to engage in any transaction, practice, or course of business, which operates as a fraud or deceit upon any client or proposed client.

It is hereby further ordered that defendants and defendants' agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this default judgment by personal service or otherwise are permanently restrained and enjoined from violating Section 206(4) of the Advisers Act and Rule 206(4)-8 by the use of the mails or any

means or instrumentality of interstate commerce: (a) making any untrue statement of material fact, or failing to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, to any investor or prospective investor in a pooled investment vehicle, or (b) otherwise engaging in any act, practice, or course of business that is fraudulent, deceptive, or manipulative with respect to any investor or prospective investor in a pooled investment vehicle.

## CONCLUSION

To the extent stated above, plaintiff's application for default judgment is **GRANTED**. Since this is a default judgment, the Commission must personally serve defendant with the injunction in order for it to be subject to the contempt power of the district court.

**IT IS SO ORDERED.**

Dated: November 1, 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE